DECISION AND JUDGMENT ENTRY
This matter is before the court following the Wood County Court of Common Pleas' May 23, 2000 judgment entry which found that defendant-appellee, city of Fostoria, was entitled to reimbursement in the amount of $25,000 for medical bills paid on behalf of plaintiff-appellant, Rachel Grine. The city of Fostoria has also filed a cross-appeal.
The facts of this case are as follows. On October 31, 1997, appellant, Rachel Grine, was a passenger in a motor vehicle driven by her father, Timothy Grine. The vehicle was struck by a vehicle negligently operated by Susan Payne. Appellant suffered serious bodily injuries, including a hip fracture and fractured left femur.
At the time of the accident Payne was covered under an automobile liability insurance policy with liability limits of $25,000/$50,000. Rachel Grine was an insured under her parents' uninsured/underinsured automobile liability insurance policy which had a limit of $100,000. Grine was also a covered dependent under the city's health and vision benefits which were provided through her mother, LouAnne Grine's employment. On the date of the accident, the benefit plan had a subrogation/reimbursement policy which provided, in part:
 "If the Plan pays any benefits for you, or your dependant, because of an injury or sickness which was caused by a third party, then the Plan will pay its benefits on the condition and with the agreement and understanding that you, or your dependant, will reimburse the Plan for the amount of benefits paid (including any costs to the Plan in recovering its money, for example, attorney's fees and costs) from the amount you recover from the third party. You will not be required to reimburse the Plan for more than you receive by way of settlement or recovery on a judgment. If you recover less than the Plan has paid, you will not have to pay any additional money out of your own pocket: if you recover more than the Plan has paid, you will be entitled to keep the difference between what you recovered and what the Plan has paid.
"The Plan's right to reimbursement from amounts you recover because of your claim against a third party is technically called `subrogation.' It applies to all claims, demands, actions and rights of recovery you may have against a third party or parties and the third party's insurers for your sickness or injury." The parties contest whether the plan was entirely funded by the city or whether employees funded a portion through payroll deductions.
The instant dispute stems from the city's payment of $41,723.15 of appellant's medical expenses which totaled $53,395.24. Appellant reached a settlement with Payne to recover her insurance policy limits totaling $25,000. Appellant also received an additional $75,000 from her own underinsured policy. Following the payment of the above amount, the city requested full reimbursement from Payne's liability coverage pursuant to the terms of the benefit plan.
On February 2, 2000, appellant filed a motion for summary judgment asking the trial court to declare that the city may not enforce and contractual rights of subrogation/reimbursement against the proceeds from Payne. Appellee filed a brief in opposition and its own motion for summary judgment on February 17, 2000. The city argued that it should be reimbursed the full sum of $41,723.15 from any recovery by appellant.
On March 28, 2000, the trial court denied appellee's motion and granted appellant's, in part, stating that appellee had no right to subrogation until appellant had been fully compensated for her injuries. The trial court further held that appellee had subrogation rights only up to $25,000, or Payne's insurance policy limit.
A bench trial to assess damages was held on April 12, 2000. In its May 23, 2000 judgment entry, the trial court noted that appellant had incurred medical expenses in the amount of $53,395.42 and that she was entitled to $115,000 for pain and suffering. The court then, reversing its March 28, 2000 decision, found that the city was entitled to priority under the terms of the subrogation provision. However, the court limited the city's recovery to $25,000, the limits of Payne's liability insurance policy. It is from this decision that the parties appeal.
Appellant asserts the following assignment of error:
 "THE TRIAL COURT ERRED IN FAILING TO FOLLOW THE SYLLABUS LAW FROM BLUE CROSS AND BLUE SHIELD MUTUAL OF OHIO VS. HRENKO (1995), 72 O.ST.3d 120, AND HOLDING THAT THE CITY OF FOSTORIA'S CONTRACTUAL SUBROGATION CLAIM HAD PRIORITY OVER THE PLAINTIFF'S RIGHT TO BE FULLY COMPENSATED FOR HER INJURIES."
Appellee/cross-appellant ("appellee" or "city") sets forth the following assignments of error:
"I. ASSIGNMENT OF ERRORS [sic]
 "A. THE TRIAL COURT PROPERLY FOLLOWED OHIO PRECEDENT BY ENFORCING THE CITY'S SUBROGATION AND REIMBURSEMENT RIGHTS.
 "B. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY LIMITING THE CITY'S SUBROGATION RIGHTS TO ONLY THE MONEY RECOVERED FROM THE RESPONSIBLE PARTY."
At the outset, we note that appellee's first assignment of error is not technically an "error" as contemplated by App.R. 16(A). We will, accordingly, disregard it as an alleged error; however, we shall refer to the arguments made as responsive to appellant's assignment of error. We further note that because appellant and appellee's assignments of error are interrelated, they will be addressed together.
In this appeal, the parties dispute whether or not the city is entitled to reimbursement for any of the $41,000 it paid for appellant's injuries. This sum, if fully recoverable, would come from two sources. First, the $25,000 recovered from the tortfeasor would be exhausted and then the remainder taken from the $75,000 paid by appellant's underinsurance carrier. For sake of clarity, we shall fist address whether the agreement between the parties permits recovery from underinsurance.
An insurer's right to subrogation may arise by operation of law, statute or contract. Contractual, also referred to as conventional, subrogation is based upon the contractual obligations of the parties.State v. Jones (1980), 61 Ohio St.2d 99, 101. It is undisputed that contractual subrogation is the type at issue in the instant case and, therefore, ordinary rules of contract construction apply.
If the language of an insurance contract is uncertain or ambiguous such language, which is selected by the insurer, must be liberally construed in favor of the insured and strictly against the insurer. AmericanFinancial Corp. v. Fireman's Fund Ins. Co. (1968), 15 Ohio St.2d 171,173; Lane v. Grange Mut. Cos. (1989), 45 Ohio St.3d 63, 65. A contract construction maxim which is also relevant here is the Latin phraseexpressio unis est exclusio alternius, or the inclusion of a specific thing implies the exclusion of those not mentioned. Helberg v. Natl.Union Fire Ins. Co. (1995), 102 Ohio App.3d 679, 683.
The relevant provision of the plan states that if the plan pays any benefits due to an injury or illness "caused by a third party," the city may recover the benefits it paid "from the amount you recover from the third party." The plan goes on to state that the city's right to subrogation "applies to all claims, demands, actions and rights of recovery you may have against a third party or parties and the third party's insurers * * *." The plan makes no mention of recovery from any source other that the actual third party that caused the injury, which in this case is Payne. In our view, had the city intended to be subrogated to payments made by underinsurance carriers, it should have specifically stated so in the plan language. Accordingly, the city's right to reimbursement, if any, is limited to appellant's recovery from Payne, or $25,000. Appellee's cross-assignment of error is not well-taken.
In appellant's sole assignment of error, she argues that prior to the city's right to recover any of the benefits it paid, she must be fully compensated for her injuries, or "made whole". Because appellant did not recover the full amount of her damages, she is claiming that the trial court erred in awarding the city $25,000. In support of her argument, appellant relies chiefly on Blue Cross Blue Shield Mut. of Ohio v.Hrenko (1995), 72 Ohio St.3d 120, and cites several unreported appellate decisions. The Hrenko syllabus states:
 "Pursuant to the terms of an insurance contract, a health insurer that has paid medical benefits to its insured and has been subrogated to the rights of its insured may recover from the insured after the insured receives full compensation by way of a settlement with the insured's uninsured motorist carrier."
Appellee, on the other hand, relies on a line of cases, including Ervinv. Garner (1971), 25 Ohio St.2d 231, which suggest that clear and unambiguous subrogation provisions are enforceable whether or not the injured party has received full compensation. Ervin, at paragraph two of the syllabus, states:
 "Where an insured sustains a loss which is partially covered by a policy of insurance, and assigns to the insurer all right of recovery against a third-party wrongdoer to the extent of the payment by the insurer to the insured; and where prior to the filing of the insured's lawsuit against the tort-feasor the insurer communicated to insured's counsel its wish to enter the lawsuit as a co-plaintiff, and asked insured's counsel to represent it, which request was never answered; and although no cooperation and assistance was given thereafter by the insurer, equity does not require that the insured be first indemnified out of proceeds of such recovery." (Citation omitted.)
Upon review of the respective case law, this court is inclined to follow the more recent pronouncement of law, Hrenko, and the first, second, fifth, and, in dicta, eleventh districts[1] which all refer to the recent "trend" in Ohio courts that an insurer's subrogation interests will not be given priority where doing so will result in less than full recovery to the insured. Porter v. Tabern (Sept. 17, 1999), Champaign App. No. 98-CA-26, unreported. The Porter court reasoned:
 "[I]f an insurer pays less than the full amount of a loss and the insured receives less than full compensation from all sources, there is no reason why the insurer's interest should be given priority. In this type of situation, the insured is not receiving a surplus or windfall at the insurer's expense. To the contrary, even if the insurer is not given priority, the insured still faces inadequate compensation for his injuries."
In the instant case, the parties do not dispute the trial court's finding that appellant's injuries resulted in $53,000 in medical bills and $115,000 for pain and suffering. Subtracting the $41,000 the city paid for medical expenses, appellant incurred personal expenses and was damaged in the amount of $123,000. Appellant's total recovery was $100,000, and, thus, she was not fully compensated for her injuries.
We find that under the facts of the instant case, the trial court erred when it awarded $25,000 to the city. The effect of that award took away any recovery from the tortfeasor by appellant. As an insurance provider, the city, and not its insureds, must accept and be able to bear certain financial risks.
On consideration whereof, we find that substantial justice was not done the party complaining, and the judgment of the Wood County Court of Common Pleas is reversed, in part and affirmed, in part. This case is remanded to the trial court to enter judgment for appellant consistent with this decision. Court costs of this appeal are assessed to appellee.
Melvin L. Resnick, J., James R. Sherck, J.. CONCUR.
 ___________________________ Mark L. Pietrykowski, P.J.
JUDGE
[1] See Moellman v. Niehaus (Feb. 5, 1999), Hamilton App. No. C-971113, unreported; Porter v. Tabern (Sept. 17, 1999), Champaign App. No. 98-CA-26, unreported; Cent. Res. Life Ins. Co. v. Hartzell (Nov. 30, 1995), Tuscarawas App. No. 94AP120094, unreported; Johnson v. ProgressiveIns. Co. (Dec. 23, 1999), Lake App. No. 98-L-102, unreported.