OPINION
Appellant, Master G. Berrios, appeals the judgment of the trial court granting appellee's, State Farm Insurance Company ("State Farm"), motion for summary judgment. The trial court's ruling was based on its conclusion that appellee was entitled to subrogate medical payments from the proceeds appellant received from the tortfeasor. The trial court made this finding despite appellee's obligation under the insurance policy to pay appellant pursuant to both the underinsured motorist benefits provision and the medical coverage provision. We affirm.
On December 16, 1997, appellant was involved in an auto accident with an underinsured motorist, insured by Progressive Insurance Company ("Progressive"), with a maximum of $12,500 per person. At the time of the accident, appellant was covered by an insurance policy issued by appellee which provided underinsured motorist coverage in the amount of $100,000/$300,000 per occurrence and medical payments coverage of $25,000 per person. The at-fault party offered to settle appellant's claim against it for the maximum coverage provided, which appellant accepted upon obtaining appellee's consent. Accordingly, appellant received $12,500 from Progressive. Appellant also received $6,000 from State Farm pursuant to the underinsured motorist coverage provision of the policy, making his total recovery $18,500. Additionally, appellant has incurred $6,354.37 in medical expenses. State Farm paid the medical expenses in accordance with the medical coverage provision of the insurance policy, and demanded reimbursement pursuant to the subrogation clause contained in the policy. Appellant paid $6,354.37 back to State Farm.
On April 9, 1999, appellant filed a complaint in the Franklin County Court of Common Pleas against appellee for declaratory judgment and breach of contract, seeking damages for injuries and related losses resulting from the 1997 auto accident. On February 3, 2000, the parties entered into stipulation of facts whereby the issue of controversy was narrowed to the question of whether appellee was entitled to reimbursement of the $6,354.37 from the $12,500 appellant recovered from the at-fault party's insurance company. The parties also agreed, with the consent of the trial court, to submit the matter on simultaneous briefs for the court's consideration and resolution. On April 3, 2000, the trial court issued its decision granting appellee's motion for summary judgment. The trial court found that State Farm was entitled to reimbursement of the medical payments in question pursuant to the subrogation clause of the insurance policy. It is from this ruling that appellant filed this timely appeal, claiming the following assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF/APPELLANT IN GRANTING DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT ALLOWING REIMBURSEMENT OF MEDICAL PAYMENTS THROUGH SUBROGATION, OR ALTERNATIVELY, WITHOUT A REDUCTION IN THE RECOVERY SET-OFF CREDITED TO PLAINTIFF/APPELLANT IN DETERMINING UNDERINSURED MOTORIST BENEFITS, IS VOID AS A DEGRADATION OF THE PUBLIC POLICY AND PURPOSE OF R.C. 3937.18.
Preliminarily, as this matter arises out of the trial court's grant of summary judgment, pursuant to Civ.R. 56, we review the trial court's determination independently, and without deference. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. In conducting our review, we apply the same standard as the trial court. Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107.
In accordance with Civ.R. 56, summary judgment may only be granted if, viewing the evidence most strongly in favor of the non-moving party, no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, paragraph three of the syllabus (Celotex Corp. v. Catrett [1986], 477 U.S. 317, approved and followed).
In his assignment of error, appellant argues that, when a given insured pays two separate premiums for separate coverages, albeit under one policy, the insurer's set-off or subrogation of medical payments against underinsured motorist coverage due under said policy is contrary to public policy and purpose expressed in R.C. 3937.18. Appellant asserts that the Ohio Supreme Court has spoken on this issue and, in effect, the trial court's findings are contrary to the law in Ohio.
The Ohio Supreme Court has held that:
 So long as the insured pays separate premiums for medical payments coverage and uninsured motorist coverage, each of which the insured considers to be additional protection, the mere inclusion of a subrogation clause within the policy, which will enable the insurer to pursue collection from the tortfeasor of both types of payments made, does not alter the result mandated by Shearer. [Grange Mut. Cas. Co. v. Lindsey (1986), 22 Ohio St.3d 153, 156.]
In Shearer v. Motorists Mut. Ins. Co. (1978), 53 Ohio St.2d 1, the court had concluded that the uninsured coverage mandated by R.C. 3937.18
"cannot be diluted or diminished by payments made to the insured pursuant to the medical payment provision of the same contract of insurance. A contract condition providing for a deduction for medical payments paid under another portion of the insurance contract is in derogation of public policy and purpose underlying R.C. 3937.18." Shearer, at syllabus.
Appellee, on the other hand, contends that the case at bar is distinguishable from both Shearer and Lindsey above. With regard to Lindsey, appellee contends that it is inapplicable because the insurance company there attempted to offset uninsured motorist coverage payments with amounts paid under its medical payments coverage. As to Shearer, appellee agrees that a set-off of uninsured motorist coverage is impermissible, as contrasted to an exercise of its contractually permissible subrogation rights against the tortfeasor. Appellee is correct to the extent that its right of subrogation under the insurance contract is not against public policy and, thus, permissible under Ohio law. See Peterson v. Ohio Farmers Ins. Co. (1963), 175 Ohio St. 34. However, under the facts of the case at bar, if application of appellee's subrogation rights results in under-compensation for appellant, assuming that the tortfeasor's policy with Progressive did not fully compensate appellant, such would be in contravention of public policy. Since it was stipulated that "[p]laintiff was involved in a motor vehicle collision with an underinsured motorist, insured by Progressive Insurance Company," there is a concession that $12,500 was insufficient to fully compensate appellant. In fact, appellee paid an additional $6,000 to appellant. Thus, the total damages, including medical payments, were determined to be $18,500. The State Farm policy in question provides two distinct coverages, one for medical payments and the other for underinsured motorist coverage. The Ohio Supreme Court has stated, "[t]he underlying public policy for provision of uninsured and underinsured motorist coverage is `to assure that an injured person receive at least the same amount of compensation whether the tortfeasor is insured or uninsured.'" Blue Cross Blue Shield Mut. of Ohio v. Hrenko (1995), 72 Ohio St.3d 120,123, quoting Motorists Mut. Ins. Co. v. Andrews (1992), 65 Ohio St.3d 362,365.
The insured in Hrenko was injured in an automobile accident with an uninsured motorist. At the time of the accident, he had a group health insurance with Blue Cross and uninsured motorist coverage with Allstate. Blue Cross paid for Hrenko's medical expenses. Hrenko also filed a claim with Allstate where it was ultimately settled for $42,000. Blue Cross demanded reimbursement pursuant to a subrogation clause contained in the health insurance policy. When Hrenko refused, Blue Cross filed a claim that eventually was resolved by the Ohio Supreme Court. The court found that, under the subrogation clause, Blue Cross has a right to reimbursement "after the insured receives full compensation by way of a settlement with the insured's uninsured motorist carrier." (Emphasis added.) Id. at 121. It follows that, where the injured party under similar circumstances has not been fully compensated, no reimbursement is permitted. Further, considering that the public policy underlying uninsured and underinsured motorist benefits is the same, the fact that the case at bar deals with an underinsured policy provision does not preclude application of the above principles to the facts therein. Accordingly, to the extent that the $12,500 settlement between appellant and Progressive, in addition to the $6,000 from appellee, did not fully compensate appellant for all his injuries, appellee is not entitled to be reimbursed for the medical payments it expended pursuant to its contract with appellant.
However, the record indicates that appellant settled his underinsured claim with appellee for $6,000, making his total recovery $18,500. Appellant had available to him $87,500 in underinsured coverage with State Farm. There is no reason for him to settle for a mere $6,000 unless he believed he was fully compensated for all his damages. Therefore, because appellant was fully compensated, appellee is entitled to reimbursement for medical payments from the $12,500 recovered from the tortfeasor's insurance company. See Hrenko, supra.
This result is consistent with the most recent Ohio Supreme Court decisions. In Littrell v. Wigglesworth (2001), 91 Ohio St.3d 425, the issue was the amount an underinsured carrier is allowed to set off against the underinsured policy limits. The court held that the amount of set-off equals all amounts actually accessible to and recoverable from all other liability policies, including that of the tortfeasor. In reaching this conclusion, the court compared the coverage available to the underinsured motorist to that available to an uninsured motorist. Id. at 433. The court's rationale rests on the premise that an injured party should not be at a disadvantage because the negligent party was underinsured as opposed to uninsured. Consistent with the stated goal of R.C. 3937.18(A)(2), the maximum amount available to the injured party should be that of the policy limits. If the uninsured/underinsured policy limit is $100,000, the maximum recoverable damages available to one injured by an uninsured motorist would be $100,000. If the tortfeasor was underinsured, i.e., had a liability policy of $20,000, then the amount available to him from his own carrier pursuant to the underinsured coverage provision would be $80,000. Applying this rationale to the case at bar, the maximum amount available to appellant is $87,500. If his damages warranted, he could have collected the full $87,500 from State Farm, and $12,500 from Progressive to a total of $100,000, which is the policy limits. Apparently, appellant settled his claims against both insurance companies for $18,500, thus acknowledging that this was the maximum he is entitled to recover for his damages. Accordingly, we find that the $18,500 was a full compensation of appellant's damages. As indicated above, it follows that appellee is entitled to subrogate its medical payments against the tortfeasor or reimbursement from appellant.
Appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 _________________________ McCORMAC, J.
PETREE and DESHLER, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.